# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
March 11, 2014 Session

## STEVEN AARON PAGE v. STATE OF TENNESSEE

### Appeal from the Criminal Court for Davidson County
### No.  2010-A-458     Monte Watkins, Judge

---

### No.  M2013-01267-CCA-R3-PC- Filed April 23, 2014

---

Petitioner, Steven Aaron Page, pled guilty in Davidson County to one count of aggravated child abuse.  Pursuant to the plea, Petitioner was sentenced to fifteen years to be served at 100 percent.  Petitioner subsequently filed a petition for post-conviction relief arguing that he was afforded ineffective assistance of counsel and that he entered his guilty plea unknowingly and involuntarily.  The post-conviction court denied the petition.  Petitioner appealed.  After a thorough review of the record, we conclude that the post-conviction court did not err in denying the petition.  Therefore, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, and NORMA MCGEE OGLE, JJ., joined.

L. Willis Jones, Nashville, Tennessee, for the appellant, Steven Aaron Page.

Robert E. Cooper, Jr., Attorney General and Reporter; Michelle L. Consiglio-Young, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Brian Holmgren, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

In 2010, Appellant was indicted by the Davidson County Grand Jury for one count of aggravated child abuse and one count of aggravated child neglect. The following facts were set out in Appellant's guilty plea hearing:

[The victim] was one month of age at the time of this offense that occurred on December 15th, 2009.

Her mother, [ ], left the baby in the defendant's exclusive care at a residence here in Nashville, Davidson County. Approximately a half hour after that the defendant contacted a neighbor who then initiated a 911 response.

The victim was brought over to the neighbor's residence by the defendant because she was limp and having difficulty in breathing.

The child was transported to the hospital and was diagnosed with severe head trauma from abusive natures involving – abusive acts involving either shaking, or shaking plus impact; that involved sub-dural bleeds as well as rib fractures.

The defendant made some admissions to having shaken the child, but alleged that he did so to try and revive the baby; however, our medical proof would have established that that explanation was insufficient.

The defendant was the exclusive caretaker for the child when the child became symptomatic, and the symptoms are associated with the type of severe head trauma that she had sustained.

The defendant, also, made statements attempting to implicate both the neighbor as well as a sibling in causing the injuries to the baby.

On January 5, 2011, Petitioner pled guilty to one count of aggravated child abuse. The aggravated child neglect count was dismissed. Pursuant to the plea, Petitioner was sentenced to fifteen years as a Range I, standard offender, to be served at 100 percent.

On December 8, 2011, Petitioner filed a pro se petition for post-conviction relief. In the petition, he argued that he received ineffective assistance of counsel and that his plea was entered unknowingly and involuntarily. Counsel was appointed, and an amended petition was filed. On September 4, 2012, the post-conviction court held an evidentiary hearing.

Petitioner was the first witness at the evidentiary hearing. He stated the trial counsel met with him monthly. Petitioner testified that trial counsel did not explain any possible defenses to Petitioner. According to Petitioner, trial counsel discussed Dr. Edward Willey as an expert witness. However, trial counsel stated that Dr. Willey would not be a good witness for Petitioner. Petitioner did not see any information regarding Dr. Willey until after the guilty plea was entered. Petitioner stated that if he had seen the information about Dr. Willey, he would not have pled guilty. Petitioner complained that trial counsel spoke with only a few other doctors and that trial counsel never shared any information with him. Once again, Petitioner stated that he would have gone to trial instead of pleading guilty if he had this information.

Petitioner also stated that trial counsel did not explain the elements of aggravated child abuse and aggravated child neglect to him before his guilty plea. He stated that he only signed the plea agreement because trial counsel promised him "a sentence reduction after being sentenced." Petitioner claimed that he did not know that he would not be able to get a sentence reduction after he pled guilty. Petitioner stated that trial counsel told him he would be convicted for attempted murder if he did not accept the plea bargain. He stated that his plea was involuntary because he did not have the information from the doctor or knowledge about criminal proceedings and, in fact, he did not want to plead guilty because he did not commit the crime.

On cross-examination, Petitioner agreed that he had agreed to everything at the guilty plea hearing and that he told the trial court he was entering his plea freely and voluntarily. He stated that he knew of Dr. Willey's report before entering his plea, but he had not seen the report. Petitioner agreed that trial counsel told him that presenting Dr. Willey as a witness could do more harm than good for his case. Petitioner stated that trial counsel told him that each charge carried a sentence of fifteen to twenty-five years to be served at 100 percent.

Trial counsel also testified at the hearing. Trial counsel stated that he received a report from a doctor who was not Dr. Willey and reviewed the report with Petitioner. He

stated that he did not leave it with Petitioner at jail because Petitioner did not want the report left with him at the jail. Trial counsel stated that it was common for defendants who had charges involving the harming of children not to keep such information in their cell. Trial counsel stated that he offered to return to the jail and review the report with Petitioner again.

Trial counsel stated that he also received a report from Dr. Willey. Trial counsel stated that he reviewed this report with Petitioner. Trial counsel stated that he was concerned that Dr. Willey would not be a credible witness at trial because Dr. Willey did not believe in shaken baby syndrome and did not believe that certain symptoms were evidence of shaken baby syndrome. Because Dr. Willey's belief was not consistent with the general medical community, trial counsel did not want him as a witness.

Trial counsel denied Petitioner's claim that trial counsel had told him he could receive a sentence reduction after entering his guilty plea. Trial counsel testified that Petitioner did not tell him that he did not want to enter the plea, and trial counsel did not force Petitioner to accept the plea. Trial counsel testified that he went over the process if Petitioner went to trial, the elements of the offenses, the indictment, the pertinent law, and potential sentences. Trial counsel went over the plea agreement with Petitioner line-by-line as Petitioner initialed each line.

Trial counsel stated that Petitioner had admitted to shaking the victim. For this reason, trial counsel did not believe that witnesses, aside from medical professionals, would be helpful for Petitioner's defense. Trial counsel admitted that he told Petitioner that the plea offer was the best deal he was going to get and that the outcome would not be better if he went to trial. Trial counsel also told Petitioner that the decision to accept the plea was the Petitioner's decision alone.

Trial counsel stated that he did not think that the theory that the injuries were an accident would work because the victim's sibling had similar injuries. Trial counsel was concerned that evidence would be presented regarding the sibling's injuries.

On September 12, 2012, the post-conviction court denied the petition. The post-conviction court made the following findings:

> A close review of the record and testimony presented, reveals that counsel [met] with defendant and informed him of the nature of the charges against him, the likelihood of and range of punishment, and the nature and consequences of the plea agreement to the petitioner.

Therefore, Petitioner has failed to demonstrate by clear and convincing evidence ineffective assistance of counsel and that the plea was a violation of due process rights in violation of a constitutional right to render his conviction and sentence void or voidable under the Post Conviction Relief Act. The Court does not find the petitioner's testimony to be credible. Accordingly, the Court finds that Petitioner has failed to show that he was prejudice[d] by counsel's allegedly deficient conduct. *Strickland*, 466 U.S. at 694.

On May 22, 2013, Petitioner filed an untimely Notice of Appeal.

## ANALYSIS

Initially, we address the fact that Petitioner's notice of appeal was untimely. "In an appeal as of right to the . . . Court of Criminal Appeals, the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from . . . ." Tenn. R. App. P. 4(a). The post-conviction court filed its dismissal of the petition on September 12, 2012. Petitioner filed his notice of appeal on May 22, 2013, roughly eight months after the post-conviction court's final action. This is well outside the thirty days called for in the statute. In criminal cases, however, "the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." *See id.*

In the case at hand, Petitioner filed a "Motion to Waive Filing of Notice of Appeal." Attached to this motion was an affidavit from Petitioner's post-conviction counsel. In that affidavit, post-conviction counsel set out convoluted facts connected to his change of office and loss of the post-conviction court's denial of the petition. At the conclusion of the affidavit, post-conviction counsel states that the failure to file the notice of appeal within thirty days was in no way the fault of Petitioner. Therefore, we have decided in this case that it is in the interest of justice to waive the timely filing of the notice of appeal. We now turn to the merits of this case.

## Post-conviction Standard of Review

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This

Court may not re-weigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

## Ineffective Assistance of Counsel

Petitioner argues that he was afforded ineffective assistance of counsel because trial counsel "failed to properly prepare the case." The State disagrees.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing by clear and convincing evidence that "(a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial." *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996); *see also* T.C.A. § 40-30-110(f). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580.

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. *See id.* at 578. However, our supreme court has "determined that the issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . .; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *Burns*, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, Petitioner is not entitled to the benefit of hindsight. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective

assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). As stated above, in order to successfully challenge the effectiveness of counsel, Petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *See Baxter*, 523 S.W.2d at 936. Under *Strickland v. Washington*, Petitioner must establish: (1) deficient representation; and (2) prejudice resulting from the deficiency. 466 U.S. 668, 694 (1984). However, in the context of a guilty plea, to satisfy the second prong of *Strickland*, Petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

Petitioner has not proven that trial counsel's representation was deficient or that he would not have pled guilty without the alleged errors and would have gone to trial. It is up to the trial court to determine credibility of witnesses and the post-conviction court's findings have the weight of a jury verdict. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn.1999). The post-conviction court specifically found that the testimony of trial counsel was credible. This testimony demonstrated a well-thought out and planned investigation of the situation at hand. Therefore, Petitioner has not met either prong under *Strickland*.

<u>Guilty Plea</u>

Petitioner also argues that the post-conviction court erred in dismissing his petition because he entered his plea unknowingly and involuntarily. The State disagrees.

When analyzing a guilty plea, we look to the federal standard announced in *Boykin v. Alabama*, 395 U.S. 238 (1969), and the State standard set out in *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977), *superceded on other grounds* by Tenn. R. Crim. P. 37(b) and Tenn. R. App. P. 3(b). *State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999). In *Boykin*, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242; *see Pettus*, 986 S.W.2d at 542. Similarly, our Tennessee Supreme Court in *Mackey* required an affirmative showing of a voluntary and knowing guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. 553 S.W.2d at 340; *see Pettus*, 986 S.W.2d at 542. The standard is the same for a "best interest" or *Alford* plea, that is, "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Alford*, 400 U.S. at 31.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). The trial

court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. *Pettus*, 986 S.W.2d at 542; *Blankenship*, 858 S.W.2d at 904.

As stated above, post-conviction court's factual findings are given a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. We have found nothing in the record to preponderate against the post-conviction court's findings.

The transcript of the guilty plea hearing as well as the post-conviction hearing reflects that the trial court discussed the ramifications of the guilty plea with Petitioner. He was thoroughly questioned by the trial court to ascertain whether he understood the effects of the plea. The plea hearing also indicates that Petitioner knew what he was doing, understood the plea, and agreed that it was what he wanted to do to resolve the case. Petitioner has failed to show by clear and convincing evidence that he received ineffective assistance of counsel or that his guilty plea was involuntary. Moreover, Petitioner has failed to prove he did not understand the consequences of his plea.

## CONCLUSION

For the foregoing reasons, we affirm the post-conviction court's denial of the petition for post-conviction relief.

_____
JERRY L. SMITH, JUDGE